IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
_____

**FILED**

**February 9, 1999**

**Cecil W. Crowson
Appellate Court Clerk**

**GORDON CARROLL and
ORA HALL,**

     Plaintiffs-Appellees,

Vs.

Wilson Chancery No. 97-281
C.A. No. 01A01-9802-CH-00106

**JOHN W. BELCHER and
FRANKIE BELCHER,**

     Defendants-Appellants.

_____

FROM THE CHANCERY COURT OF WILSON COUNTY
THE HONORABLE C. K. SMITH, CHANCELLOR

Alan Poindexter; Rochelle, McCullough & Aulds of Lebanon
For Appellees

Michael R. Jennings of Lebanon
For Appellants

*AFFIRMED AS MODIFIED*

Opinion filed:

**W. FRANK CRAWFORD,
PRESIDING JUDGE, W.S.**

**CONCUR:**

**ALAN E. HIGHERS, JUDGE**

**DAVID R. FARMER, JUDGE**

This appeal involves an easement for ingress and egress. The defendants, John and
Frankie Belcher (Belcher), appeal the decision of the trial court granting the plaintiffs, Gordon
Carroll (Carroll) and Ora Hall (Hall), the right to widen an easement running over their property.

This dispute arises from the attempts of Carroll, owner of the dominant estate, and Hall, his vendee under a sales contract, to widen an easement for the ingress and egress over Belcher's property, the servient estate. Carroll is the owner of approximately 16 acres of property that has no road frontage. Access to Carroll's property is obtained through an easement located on land Belcher has owned since 1954. This easement has been used by Carroll and previous owners of Carroll's property to reach the road for well over 50 years.

Although no deed described the easement, Belcher and other witnesses stated that it had been an old wagon road prior to being used by automobiles. The easement itself was described by witnesses at trial as approximately eight to ten feet wide and traveling approximately six hundred feet across Belcher's property. The easement was a dirt and gravel road wide enough for automobiles to move to and from Carroll's land.

Carroll purchased the land in 1997. Carroll and Hall subsequently entered into a land installment sales contract which required Hall to pay the full amount of the purchase price before receiving the deed. Hall and James Moon (Moon) presently occupy the residence located on Carroll's land.

In July, 1977, shortly after acquiring possession of the property, Moon, apparently on behalf of Hall, commenced to widen the easement. This work was undertaken without the knowledge or permission of Belcher, who, at that time, was in the hospital. Using a bulldozer, Moon moved debris onto Belcher's land and made various ruts through Belcher's land off of the existing right of way. The testimony indicated that it was Hall's intention to widen the easement to fifty feet. Belcher returned from the hospital, and, when he found out what had happened, he erected fences along the easement's historical boundaries which were approximately eight to ten feet in width.

Hall and Carroll then filed a petition for temporary and permanent restraining order to keep Belcher from interfering with or preventing Carroll and Hall's use of easement. The complaint avers that the defendants, Belcher, had constructed and erected posts within the premises of the easement and that the posts restricted entry and exit to the residence on the property and have caused damage to the motor vehicles using the easement. The complaint seeks a temporary restraining order and a permanent injunction to restrain the defendants from interfering with or preventing the use of the easement as a driveway access through the Carroll/Hall property. Plaintiffs also seek an injunction to require removal of any obstacles from

the easement to and from the property.

Defendants' answer admits that there is an easement across the property and admits that defendants have constructed and erected posts but avers that they have been erected on the edge of the easement and do not obstruct the right of way provided by the easement. The defendants aver that the posts and fence were placed at the edge of the easement that has been used for over fifty years.

The case was tried by the court without a jury, and the court entered an order on October 31, 1997 containing findings of fact and states as follows:

> This cause came on to be heard for trial on October 15th, 1997 before the Honorable C. K. Smith, Chancellor for Wilson County, Tennessee, and with all parties before the Court and after due consideration of all sworn testimony and documentary evidence, the Court does find as follows:
>
> Findings of Fact
>
> 1. That the Plaintiff, Gordon Carroll, is the owner 16.18 acres located of Thomas Road in northern Wilson County, Tennessee.
>
> 2. That the 16.18 acre tract Plaintiff owns has no frontage on a public road.
>
> 3. That historically, access to and from the 16.18 acre tract is by an unrecorded and undefined easement across Defendants' lands.
>
> 4. That the Defendants are owners of the servient tenement.
>
> 5. That the Plaintiff, Gordon Carroll, is the owner of the dominant tenement.
>
> 6. That the historical width of the aforesaid easement has been anywhere from eight to ten feet wide.
>
> 7. That the historical use of the aforesaid easement has been for ingress and egress to the Plaintiff's tract.
>
> 8. That the aforesaid easement does not materially affect the Defendants' use and enjoyment of their land.
>
> 9. That due to the requirements of modern vehicles, e.g. ambulances, fire trucks, delivery vehicles, etc, an easement of fifteen feet is required so that vehicle may ingress and egress the Plaintiff's property with adequate space.
>
> 10. That increasing the width of the easement does not materially increase the burden on the servient tenement so long as the scope of the use is limited to ingress and egress.
>
> Conclusions of Law
>
> 1. The Plaintiff, Gordon Carroll, is entitled to a fifteen foot wide easement across Defendants' land from Thomas Road to Plaintiff's 16.18 acre tract.
>
> 2. Plaintiff's use of the easement is limited to ingress and egress

3

to and from his property.

3. Plaintiff may make repairs and improvements to the area within the easement boundaries.

4. If Plaintiff must cut trees or remove timber, the Defendants will be compensated for such material.

5. Should Plaintiff damage the Defendants' property outside the easement boundaries, then Plaintiff shall compensate the Defendants for such damage.

6. The centerline of the easement shall be located as near as possible to the centerline of the historical easement. The easement's width shall extend seven and one-half feet perpendicular from each side of the centerline.

7. The Defendants are permanently restrained and enjoined from erecting any structure or obstacle that would interfere with the easement being fifteen feet.

8. Should the Plaintiff or his agents determine that trees within the easement boundaries must be cut, no cutting shall occur until a value for the trees has been mutually agreed upon by the parties hereto or established by the Court.

9. The Plaintiff is liable to the Defendants for damages caused to the Defendants' property, to-wit: ruts, debris, etc. by the Plaintiff's agents. The Defendants are entitled to $1,000.00 in damages for this act.

10. In the event the parties cannot mutually agree to the location of the centerline of the easement or boundaries thereto, the Clerk & Master shall, at the request of either party, appoint a surveyor licensed by the State of Tennessee to determine the easement's centerline and mark the boundaries of the easement. The parties shall each bear one-half the cost of such survey.

11. The costs of this action are taxed to each party one-half each.

12. Execution of the judgment of the Court is stayed for thirty days from entry of this Order. Should either party appeal the decision of this Court, then the execution of the judgment of this Court shall be stayed until a decision is rendered by the Tennessee Court of Appeals.

Belcher appeals the trial courts ruling and in his brief asks this Court to consider the following issues.

1. Can the width of an easement for ingress and egress be enlarged after its limits have been defined by practical construction and many years of use?

2. Can the width of an easement, established by historical use and location, be increased arbitrarily due to the requirements of "modern vehicles"?

3. Is the trial court's decision supported by the evidence?

These issues will be considered together. Since this case was tried by the trial court

4

sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against the findings, we must affirm, absent error of law. T.R.A.P. 13(d).

We agree with the trial court's findings of fact except for numbers nine and ten. From our review of the record, we do not find evidence that an easement of fifteen feet is required for ingress and egress through the dominant estate. We also do not agree that increasing the width of an easement does not increase the burden on the servient estate since taking additional property would appear to be an undue burden.

Although the trial court found that the easement must be fifteen feet wide in order to accommodate modern vehicles such as ambulances and fire trucks, no evidence was presented at trial that would substantiate this finding. In fact, the only testimony concerning the adequacy of the easement for modern vehicles was that of Belcher who stated that Carroll had driven a large timber truck loaded with gravel along the easement.

The proof in the record is that the easement as used, approximately eight to ten feet in width, has been providing adequate ingress and egress for vehicular traffic to the property. After the owners of the dominant estate started bulldozing the easement to widen it and thus encroach upon the servient estate, the owner of the servient estate placed a fence on the border of the easement as used which apparently was from eight to ten feet in width. This created some difficult in using the easement because of the close proximity of the fence, and the parties turned to the courts to resolve this unfortunate dispute between neighbors.

We must determine whether the trial court erred in widening the easement as it had been used historically. After a complete review of the record and for the reasons hereinafter stated, we find the trial court did err in that regard.

"An easement is a right an owner has to some lawful use of the real property of another." *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. App. 1996). The case at bar involves an easement appurtenant, as there are two tracts involved. Belcher's property, as the servient tenement, benefits Carroll's property, the dominant tenement.

In 10 Tennessee Jurisprudence, *Easements* §6 (1994) it is stated:

> Although the rights of the easement owner are paramount, to the extent of the easement, to those of the landowner, the rights of the easement owner and of the landowner are not absolute, irrelative, and uncontrolled, but are so limited, each by the other, that there may be a due and reasonable enjoyment of both the easement and the servient estate.
>
> The extent of an easement is determinable by a true construction of the grant or reservation by which it is created, aided by any concomitant

5

circumstances which have a legitimate tendency to show the intention of the party. . . .

> *The extent of an easement is also determinable by its nature and use.* (emphasis added)

Our Supreme Court has stated the general rule regarding changes in easements of ingress and egress by the dominant estate:

> ' [T] he owner of an easement of way may prepare, maintain, improve, or repair the way in a manner and to an extent reasonably calculated to promote the purposes for which it was created or acquitted, *causing neither an undue burden upon the servient estate, nor an unwarranted interference with the rights of common owners or the independent rights of others.'*

*Mize v. Ownby*, 225 S.W.2d 33, 35, 189 Tenn. 207 (1949) (emphasis added).

To allow Carroll to expand the easement to fifteen feet, will, in effect, grant Carroll the right to take approximately 3000 square feet of Belcher's property. This appears to be an "unwarranted interference" with Belcher's rights, and as such, causes an undue burden upon him.

While it is true that neither the deed nor other writing defined the boundaries or width of the easement, the testimony at trial indicated that it was no more than ten feet wide. The easement has been used for ingress and egress from the property presently owned by Carroll for more than fifty years, and the width has remained constant. When Carroll bought the property the easement was clearly visible. The only evidence in the record concerning Carroll's contention that the easement is not wide enough for modern vehicles are photographs taken by him. These photographs show an unimproved, one-lane road approximately ten feet wide. These same photographs also show a sports utility vehicle on the easement with room to spare on either side. From the evidence in the record, it seems clear that the easement is able to handle modern vehicles.

By the same token, the owner of the servient estate cannot interfere with the lawful use of the easement by the owner of the dominant estate. In 28(A) CJS *Easements*, § 175, (1996) it is stated:

> The owner of the servient estate . . . cannot make any alternations in his property by which the enjoyment of the easement will be materially interfered with.

From the proof in the record, it is shown that Belcher's placing of the fence on the border of the easement of eight to ten feet materially interferes with the use of the easement by the owners of the dominant estate. The terrain over which the easement runs is wooded, and the easement is not straight. This makes it somewhat difficult in close quarters to drive a vehicle without striking the fence. Accordingly, some relief should be granted to the owners of the dominant estate in the use of the easement.

Accordingly, the order of the trial court is modified to define the easement as ten feet wide but if Belcher determines that fences should be erected along the easement, the fences shall be erected at least two feet outside of the

sidelines of the ten foot easement, and Belcher is enjoined from erecting any structure or obstacle within this two foot area.

As modified, the order of the trial court is in all other respects affirmed. Costs of the appeal are assessed against the appellee.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**ALAN E. HIGHERS, JUDGE**

_____
**DAVID R. FARMER, JUDGE**